UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.,<br><br>        Plaintiff,<br><br> -v-<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>        Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1. This case seeks to enforce requests for records from the federal government concerning immigration enforcement efforts and related government programs and infrastructure. Specifically, it is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, seeking declaratory, injunctive, and other appropriate relief to compel the U.S. Department of Homeland Security ("DHS") and the U.S. Department of Justice ("DOJ" and, collectively with DHS, "Defendants" or "Government"), and their respective offices and components identified in Exhibit 1 hereto, to produce agency records that have been improperly withheld from Plaintiff, the NAACP Legal Defense and Educational Fund, Inc. ("Plaintiff" or "LDF").

2. The records requested by LDF relate to Defendants' implementation of the President's Order issued on September 22, 2025 (the "September Order"), purporting to designate "Antifa" as a domestic terrorist organization,[1] and National Security Presidential Memorandum-

---

[1] Order, *Designating Antifa as a Domestic Terrorist Organization*, 90 Fed. Reg. 46317 (Sept. 25, 2025), available at https://www.govinfo.gov/content/pkg/FR-2025-09-25/pdf/2025-18709.pdf. The federal register does not describe this document as an "Executive Order" but rather as an "Order," and it did not receive a serialized number as executive orders ordinarily do.

7,[2] which sought to implement the September Order on September 25, 2025 ("NSPM-7" and, together with the September Order, the "September 2025 Enforcement Directives").

3.      The requested records also pertain to a memorandum from the U.S. Attorney General, dated December 24, 2025, that directed federal law enforcement and prosecutors to investigate and target "Antifa" (the "AG Memorandum").[3]  Since that time and in furtherance of the September 2025 Enforcement Directives and the AG Memorandum, employees of DHS (including employees of U.S. Immigration and Customs Enforcement ("ICE")) and other Executive agencies are reported to have conducted enforcement activities affecting communities in the United States.

4.      According to media reporting and public federal records, Government has conducted these activities by relying on a longstanding security infrastructure that includes task forces,[4] domestic watchlists of citizens and noncitizens,[5] data mining,[6] artificial intelligence,[7] the purchase of technology and data from private industry,[8] and domestic intelligence operations.[9] In

---

[2] Nat'l Security Presidential Memorandum-7, *Countering Domestic Terrorism and Organized Political Violence,* 90 Fed. Reg. 47225 (Sept. 30, 2025), https://www.federalregister.gov/documents/2025/09/30/2025-19141/countering-domestic-terrorism-and-organized-political-violence.

[3] Off. of the Att'y Gen., Memorandum, Implementing National Security Presidential Memorandum-7: Countering Domestic Terrorism and Organized Political Violence (Dec. 24, 2025), available at https://www.kenklippenstein.com/api/v1/file/310cfb3c-c9f4-4828-870c-63842dc14c2d.pdf.

[4] Homeland Security Task Force (last visited June 15, 2026), https://hstf.gov/; Jerod Macdonald-Evoy, *Trump's Acting AG Vows Foreign Terrorism Charges for American Street Gangs*, AZ Mirror (May 6, 2026), https://azmirror.com/2026/05/06/trump-acting-ag-vows-foreign-terrorism-charges-for-american-street-gangs/
[5] Ken Klippenstein, *Exclusive: ICE's Secret Watchlists of Americans*, Ken Klippenstein (Jan. 28, 2026), https://www.kenklippenstein.com/p/ices-secret-watchlists-of-americans.
[6] Dep't of Homeland Security, DHS Data Mining Reports (last visited June 15, 2026), https://www.dhs.gov/publication/dhs-data-mining-reports.
[7] Dep't of Homeland Security, Artificial Intelligence at DHS (last visited June 15, 2026), https://www.dhs.gov/ai; Jamiles Lartey, *How AI Surveillance Tech Is Creeping From the Southern Border Into the Rest of the Country*, The Marshall Project (Feb. 7, 2026), https://www.themarshallproject.org/2026/02/07/ai-texas-ice-mn-tech.
[8] For some of many examples of the involvement of private industry, see Amnesty Int'l, *USA/Global: Tech Made by Palantir and Babel Street Post Surveillance Threats to Pro-Palestine Student Protestors & Migrants*, Amnesty International (Aug. 21, 2025), https://www.amnesty.org/en/latest/news/2025/08/usa-global-tech-made-by-palantir-and-babel-street-pose-surveillance-threats-to-pro-palestine-student-protestors-migrants/.
[9] Spencer Reynolds & Faiza Patel, *A New Vision for Domestic Intelligence*, Brennan Center for Justice (Mar. 30,

addition to information contained in operational documents, descriptions of these activities – and their impacts – are included in internal inquiries, programmatic evaluations, and privacy analyses.[10]

5.       LDF filed its April 2026 FOIA requests to obtain information relevant to the implementation of the September 2025 Enforcement Directives and the AG Memorandum, related security infrastructure, and inquiries, evaluations, and analyses of these various programs.  Media has reported the existence of harmful activities, but this news coverage lacks critical information to allow the public, including LDF, to understand the federal government's immigration enforcement actions, purportedly on its behalf, and the resulting harms. The practices of agencies like DHS and DOJ, which have broadly impacted Black people throughout the United States, are not limited to narrow initiatives pertaining to immigration only but instead are part of a sprawling, decades-old infrastructure that is the subject of LDF's FOIA requests.

**JURISDICTION AND VENUE**

6.       This Court has jurisdiction over this action and over the parties pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 552(a)(4)(B). This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202.

7.       Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1391(e) because Plaintiff resides and has its principal place of business in this district.

8.       Because Defendants have failed to comply with the time limits imposed by FOIA with respect to Plaintiff's requests, Plaintiff has exhausted its administrative remedies, including

---

2023), https://www.brennancenter.org/our-work/policy-solutions/new-vision-domestic-intelligence.

[10] *See, e.g.,* Dell Cameron, *DHS Kept Chicago Police Records for Months in Violation of Domestic Espionage Rules*, Wired (Nov. 12, 2025), https://www.wired.com/story/dhs-kept-chicago-police-records-for-months-in-violation-of-domestic-espionage-rules/.

by constructive exhaustion, and is entitled to seek relief directly from this Court. 5 U.S.C. § 552(a)(6)(C)(i); 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.      LDF is a nonprofit 501(c)(3) corporation, established under the laws of the State of New York. Founded in 1940 under the leadership of Thurgood Marshall, LDF focuses on advancing civil rights and racial justice in the areas of criminal justice, education, economic justice, and political participation. Although LDF was originally founded by the National Association for the Advancement of Colored People (NAACP) and shares its commitment to equal rights, it has been a completely separate organization since 1957.

10.      To advance its mission, LDF uses litigation and the dissemination of information obtained through the Freedom of Information Act, among other advocacy tools, to educate the public and develop remedies to racially discriminatory law enforcement practices. Obtaining information about governmental activity, analyzing that information, and educating the public about that information is thus a critical and substantial component of LDF's work to fulfill its mission and advocacy goals.

11.      Defendant DHS is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

12.      Defendant DOJ is a department of the Executive Branch of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATUTORY FRAMEWORK

13.      "The Freedom of Information Act was enacted to facilitate public access to government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)). Its basic purpose is "to ensure an informed

4

citizenry, vital to the functioning of a democratic society, needed to check against corruption and hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

14. With that purpose in mind, the FOIA statute requires federal agencies like Defendants to disclose records within 20 working days in response to FOIA requests. 5 U.S.C. § 552(a)(6)(A)(i).

15. If there are "unusual circumstances," an agency may extend the time limit by no more than 10 working days. *Id.* at § 552(a)(6)(B)(i). To invoke that extension, the agency must provide "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.*

16. An agency can extend its processing time beyond the additional 10 days only if it provides written notice and "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id.* at § 552(a)(6)(B)(ii).

17. A requester may seek expedited processing of a FOIA request upon a showing of "compelling need." 5 U.S.C. § 552(a)(6)(E)(i). A "compelling need" exists where the requester is "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

18. A district court has jurisdiction to enjoin the agency from withholding records and to order production of records that are subject to disclosure. 5 U.S.C. § 552(a)(4)(B).

19. Additional provisions apply to whether an agency may withhold portions of records, the bases and required showings for such withholdings, and an agency's duty to segregate

5

information. Because Defendants have not yet produced any records or asserted any bases for withholding records, these issues are not presently pertinent to this lawsuit.

## BACKGROUND

### A. The September 2025 Enforcement Directives

20. On September 22, 2025, President Trump issued an order titled *Designating Antifa as a Domestic Terrorist Organization*. 90 Fed. Reg. 46,317 (Sept. 25, 2025) ("September Order"). In the September Order, the President characterizes "Antifa" as a "militarist, anarchist enterprise" and "domestic terrorist organization" that "explicitly calls for the overthrow of the United States Government, law enforcement authorities, and our system of law," and alleged that persons associated with "Antifa" had engaged in organized riots and attacks on government officials and facilities. Although the President has no power to designate domestic terrorism groups, the September Order asserts that these activities constituted "domestic terrorism." *Id.*

21. "Antifa" is not an organization and was not explicitly defined in the September Order.

22. The September Order directs all relevant executive departments and agencies to "utilize all applicable authorities to investigate, disrupt, and dismantle any and all illegal operations" conducted by "Antifa" or by any person claiming to act on its behalf. *Id.* The September Order also directs "investigatory and prosecutorial actions" against persons alleged to have provided "material support," including through funding. *Id.*

23. Three days later, on September 25, 2025, President Trump issued NSPM-7, titled *Countering Domestic Terrorism and Organized Political Violence*. 90 Fed. Reg. 47,225 (Sept. 30, 2025). NSPM-7 directs the National Joint Terrorism Task Force and local Joint Terrorism Task Forces to coordinate a "comprehensive national strategy" to investigate, prosecute, and disrupt

entities and individuals allegedly engaged in political violence and intimidation. *Id.* According to media reports, at least 23 Federal Bureau of Investigation ("FBI") field offices have opened such investigations.[11]

24.    NSPM-7 directs the Attorney General to prosecute all related federal crimes to the maximum extent permissible by law, to issue guidance identifying politically motivated acts to investigate, and to recommend additional groups or entities for potential designation as "domestic terrorist organizations." *Id.*

25.    The Administration's contemporaneous public statements make clear that the September 2025 Enforcement Directives are intended to be a coordinated policy initiative. For example, on September 25, 2025, the White House described NSPM-7 as establishing "a comprehensive strategy to investigate, disrupt, and dismantle all stages of organized political violence and domestic terrorism." *See* Fact Sheet: President Donald J. Trump Develops New Strategy to Counter Domestic Terrorism and Organized Political Violence, The White House (Sept. 25, 2025).

26.    LDF's FOIA Requests seek critical, undisclosed information about the implementation of this coordinated policy initiative. The September 2025 Enforcement Directives did not create the surveillance and enforcement apparatus they invoke, but rather redirect existing federal infrastructure. The Directives instruct agencies to "utilize all applicable authorities" and to coordinate through standing task forces, watchlisting systems, intelligence programs, and data-sharing arrangements that long predate September 2025. Understanding how the Directives are being implemented therefore requires records concerning both the new directives themselves and

---

[11] Sam Levin, *Revealed: FBI Opened Domestic Terrorism Investigations Into Anti-ICE Activity Across US*, The Guardian (Deb. 19, 2025), https://www.theguardian.com/us-news/2025/dec/19/fbi-terrorism-investigations-anti-ice-activity.

the pre-existing programs, systems, and authorities through which they are carried out. LDF's FOIA Requests seek records of both.

27.     Because the September 2025 Enforcement Directives operate by mobilizing pre-existing federal infrastructure, the date ranges in LDF's FOIA Requests reflect both the implementation of the Directives and the design, capabilities, and prior operation of the systems through which that implementation occurs. Records predating September 2025 are necessary to understand what these systems are, how they function, and how they are now being deployed in furtherance of the Directives and the AG Memorandum. Records concerning the contemporaneous operation of these systems are necessary to understand the Directives' implementation and effects.

## B. The Impact of the September 2025 Enforcement Directives

28.     Black immigrant communities and their allies have already experienced significant harm from the impact of the September 2025 Enforcement Directives and related programs. LDF seeks to obtain information about how these systems work to educate the public and protect the rights of people impacted by the implementation of these federal initiatives.

29.     The FBI and the New York City Police Department ("NYPD"), for example, accessed a private Signal group used by New York City immigrants' rights "courtwatch" volunteers, who were observing public immigration proceedings, and characterized participants as "anarchist violent extremist actors." Sam Levin, *The FBI spied on a Signal group chat of immigration activists, records reveal*, The Guardian (Nov. 21, 2025).

30.     The Government's enforcement of the September 2025 Enforcement Directives reaches far beyond violent incidents to encompass protest-adjacent monitoring, associational activity, and the observation of public immigration proceedings.  In other words, the Government has targeted individuals and groups that were exercising their constitutional rights to free speech.

*See* MPR News, *'This isn't living, right?': Minnesota immigrants share their stories while in hiding from ICE* (Feb. 19, 2026); MPR News, *Privacy advocates: ICE using private data to intimidate observers and activists* (Jan. 13, 2026).

31.     Public reporting also indicates that DHS components, including ICE and Homeland Security Investigations, implemented the September 2025 Enforcement Directives by collecting identifying information about anti-ICE protesters and bystanders. *Leaked Memo Exposes How DHS Is Building a Database on Protesters*, The New Republic (Feb. 2026). LDF's FOIA requests specifically seek records about this and similar programs.

32.     The Government has conducted these activities by relying on a longstanding security infrastructure that includes task forces, domestic watchlists of citizens and noncitizens, data mining, artificial intelligence, the purchase of technology and data from private industry, and domestic intelligence operations. In addition to information contained in operational documents, descriptions of these activities – and their benefits, risks, and impacts – are included in internal inquiries, programmatic evaluations, and privacy analyses. Although the September 2025 Enforcement Directives are recent, the programs and authorities they invoke are not, and several of LDF's FOIA Requests accordingly seek records concerning longstanding surveillance, watchlisting, data-mining, procurement, and program-evaluation activities that the Directives now have redirected.

### C. Plaintiff LDF's FOIA Requests

33.     Each of LDF's FOIA requests, as set forth below, fits squarely within FOIA's statutory purpose to hold the federal government accountable by obtaining information as a check against corruption and abuse of authority in furtherance of our democratic principles. In general, they each seek classic FOIA subject matter: agency policy and programmatic records, including

directives; policy analyses; widely shared informational or intelligence records; interagency sharing materials; procurement related records; and other documents bearing on how DHS and DOJ have implemented the September 2025 Enforcement Directives and the effects of such implementation on United States residents.

34.    The records sought by LDF are precisely the kinds of records that illuminate "what the Government is up to," *see U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989), because they bear directly on how federal agencies interpreted, operationalized, and carried out major enforcement policies, rather than on the private affairs of individual third parties.

35.    The nexus with FOIA's statutory purpose is especially true here, as LDF seeks disclosure about matters of obvious public importance: the Government's asserted terrorism designations, its use of surveillance and intelligence tools, its coordination with other law enforcement entities and private actors who assist federal work, and the possible impact of relevant federal policies on Black communities, protest activity, and other constitutionally protected conduct. Requests of that kind advance FOIA's central objective by allowing the public to test whether agencies acted lawfully, consistently with their own rules, and in a manner consistent with constitutional and civil rights mandates. In short, LDF's requests do not sit at the margins of FOIA's design; they go to the heart of the statute's function as a vehicle for democratic accountability.

36.    On April 1, 2026, April 2, 2026, and April 16, 2026, Plaintiff LDF submitted multiple written requests under the Freedom of Information Act, 5 U.S.C. § 552, to Defendants DHS and DOJ seeking records concerning, among other topics, the implementation of the September Order, NSPM-7, homeland security task forces, domestic watchlists, DHS and DOJ

uses of artificial intelligence, DHS privacy analyses, DHS data mining reports, DHS Office of Intelligence and Analysis oversight and policy records, DHS procurements, and DHS program evaluations (collectively, the "FOIA Requests"). Together, the requests seek information about interrelated government programs that implement domestic enforcement and surveillance activities. Copies of those requests are attached as Exhibits 2-13 hereto. Specifically:

a. On April 1, 2026, LDF submitted a FOIA request to DHS titled "Request for Documents on the Implementation of a September 2025 executive order and National Security Presidential Memorandum-7." That request was directed to the DHS Office of Biometric Identity Management; DHS Office for Civil Rights and Civil Liberties; DHS Office of Homeland Security Situational Awareness; DHS Office of Intelligence and Analysis; DHS Office of Strategy, Policy, and Plans; DHS Privacy Office; Federal Protective Service; the Infrastructure Security Division, National Risk Management Center, and Office of Bombing Prevention of the Cybersecurity and Infrastructure Security Agency ("CISA"); the Office of the Director and the Fraud Detection and National Security Directorate of U.S. Citizenship and Immigration Services ("USCIS"); the Office of the Director and Homeland Security Investigations of U.S. Immigration and Customs Enforcement ("ICE"); the Office of the Commissioner, National Targeting Center, National Vetting Center, Office of Intelligence, Office of Professional Responsibility, and U.S. Border Patrol of U.S. Customs and Border Protection ("CBP"); and the National Threat Assessment Center, Office of Protective Operations, Office of Strategic Intelligence and Information, and Protective Intelligence and Assessment Division of the U.S. Secret Service ("USSS"). That request sought two sets of

11

records: (i) records created between January 20, 2025, and the date of production that contained one or more listed terms, including "Antifa," "Antifa-aligned," "National Security Presidential Memorandum-7," and "NSPM-7," and that fell within specified categories, such as policies, privacy and legal analyses, directives, concepts of operations, intelligence products, records shared with governmental or private sector entities, and training documents; and (ii) records from January 1, 2023, to the date of production containing the term "anti-law enforcement sentiment" and falling within those same categories. A copy of that request is attached as Exhibit 2.

b. On April 1, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to the Office of Intelligence and Analysis's 2025 'Policy Manual.'" That request was directed to the DHS Privacy Office and sought specific records directed or referenced by sections of the January 16, 2025 DHS Office of Intelligence and Analysis ("I&A") Policy Manual, including reasonable belief statements, compliance audits, data management plans, review reports, approvals of departures from policy guidance, policy guidance memoranda, implementation guidance, key processes and products, ombuds records, records concerning perceived politicization of analysis, evaluation and review records, procurement documents for fee-based public online sources, open source access plans, waivers, MOAs for liaison officers, ACE plans, OPSPROs, AI and machine learning governance materials, and records concerning procurement of commercially available information. A copy of that request is attached as Exhibit 3.

12

c. On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Purported DHS Domestic Watchlists." That request was directed to the DHS Office for Civil Rights and Civil Liberties; DHS Office of Homeland Security Situational Awareness; DHS Office of Intelligence and Analysis; DHS Privacy Office; Federal Protective Service; the Office of the Director and Homeland Security Investigations of ICE; and the Office of the Commissioner, National Targeting Center, National Vetting Center, Office of Intelligence, Office of Professional Responsibility, and U.S. Border Patrol of CBP. It sought records regarding systems identified in public reporting as Bluekey, Grapevine, Hummingbird, Reaper, Sandcastle, Sienna, Slipstream, and Sparta, as well as HEL-A and HEL-C reports and policies governing their creation from January 1, 2021, to the date of production. A copy of that request is attached as Exhibit 4.

d. On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Certain DHS Uses of Artificial Intelligence." That request was directed to DHS Office of Biometric Identity Management ("OBIM"), the DHS Office of the Chief Information Officer, the DHS Office of Procurement Operations, the DHS Privacy Office, USCIS, CBP, and ICE. It sought records concerning enumerated cases of using artificial intelligence ("AI"), which were identified in DHS's AI inventory, updated on January 28, 2026, including Investigative Prioritization Aggregator, Dataminr, Babel, Criminal Investigations (OBIM), Mobile Fortify, several facial recognition and open source intelligence uses, ELITE, SITE Group Subscription Services, Smartphone Information

13

Forensics Triage, and records created using the Liger Generative AI Toolkit from January 1, 2024, to the date of production. A copy of that request is attached as Exhibit 5.

e. On April 2, 2026, LDF also submitted a FOIA request to DHS titled "Request for Records Related to Undisclosed DHS Uses of Artificial Intelligence." That request was directed to the DHS Office of the Chief Information Officer, DHS Office of Intelligence and Analysis, DHS Office of Procurement Operations, DHS Privacy Office, USCIS, U.S. Coast Guard, CBP, and ICE. It sought records concerning AI used as part of national security systems, including intelligence community element AI inventories, other DHS inventories of national security system AI, waivers issued under Intelligence Community Directive 505, policy documentation, concepts of operations, procurement records, and memoranda of understanding or agreement from January 1, 2025, to the date of production. A copy of that request is attached as Exhibit 6.

f. On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Homeland Security Task Forces." That request was directed to the DHS Office for Civil Rights and Civil Liberties; DHS Office of Homeland Security Situational Awareness; DHS Office of Intelligence and Analysis; DHS Office of Strategy, Policy, and Plans; DHS Privacy Office; Federal Protective Service; the Office of the Director and the Fraud Detection and National Security Directorate of USCIS; the Office of the Commissioner, National Targeting Center, Office of Field Operations, Office of Intelligence, Office of Professional Responsibility, and U.S. Border Patrol of CBP; and the Office of the Director,

14

Enforcement and Removal Operations, Homeland Security Investigations, and Office of Professional Responsibility of ICE. It sought records concerning implementation of Executive Order 14159 and Homeland Security Task Forces, including policy documentation, CONOPS, OPSPROs, contracts, MOAs/MOUs, impact assessments, policy analyses, and organizational charts from October 1, 2025, to the date of production. A copy of that request is attached as Exhibit 7.

g. On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Procurements by the Office of Selective Acquisitions." That request was directed to the DHS Office of Selective Acquisitions ("OSA") and sought solicitations, requests for proposals, proposals, awards, statements of work, contract documents, determination and findings records, procurement challenges and appeals, and records memorializing how OSA-procured products or services are used by DHS entities, from January 1, 2024, to the date of production. A copy of that request is attached as Exhibit 8.

h. On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Data Mining Reports." That request was directed to the DHS Privacy Office and sought DHS's annual data mining reports for FY2022, FY2023, FY2024, and FY2025, and related records created or maintained from January 1, 2022 to the date of production. A copy of that request is attached as Exhibit 9.

i. On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Privacy Threshold Analyses." That request sought any privacy threshold analyses created by or in the possession of DHS Office of Homeland Security Situational Awareness, DHS Office of Intelligence and Analysis, DHS

15

Privacy Office, DHS Science and Technology Directorate, USCIS, ICE, CBP, and USSS from January 1, 2024, to the date of production. A copy of that request is attached as Exhibit 10.

j.  On April 2, 2026, LDF submitted a FOIA request to DHS titled "Request for Records Related to Certain DHS Program Evaluations." That request was directed to the Office of the DHS Evaluation Officer and sought evaluation reports and related materials generated by the DHS Evaluation Officer or subordinate staff concerning the FY2020 Targeted Violence and Terrorism Prevention Grant Program evaluation and any subsequent or whole-of-program evaluations, Alternatives to Detention Programs, and the Case Management Pilot Program, along with associated exhibits, attachments, contracts, marketing literature, interagency agreements, agency responses, and policy documentation from January 1, 2020, to the date of production. A copy of that request is attached as Exhibit 11.

k.  On April 16, 2026, LDF submitted a FOIA request to DOJ titled "Request for Documents on the Implementation of a September 2025 executive order and National Security Presidential Memorandum-7." That request was directed to DOJ's Civil Rights Division, National Security Division, Office of the Associate Attorney General, Office of the Attorney General, Office of the Deputy Attorney General, specified components of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Drug Enforcement Administration ("DEA"), and specified headquarters and field offices of the FBI. It sought two sets of records from January 20, 2025 to the date of production: (i) records containing listed terms such as "Antifa," "Black Lives Matter," "National Security Presidential

16

Memorandum-7," "NSPM-7," "Prairieland," and "Turtle Island," and falling within specified categories such as policies, privacy and legal analyses, intelligence reports, interagency and private sector shared records, and training documents; and (ii) records concerning the creation, implementation, or operation of the FBI's NSPM-7 Joint Mission Center, including agreements, congressional or GAO communications, procurement records, interagency records, and intelligence reports. A copy of that request is attached as Exhibit 12.

l. On April 16, 2026, LDF submitted a FOIA request to DOJ titled "Request for Records Related to Homeland Security Task Forces." That request was directed to DOJ's Civil Rights Division, National Security Division, Office of the Associate Attorney General, Office of the Attorney General, Office of the Deputy Attorney General, specified components of ATF and DEA, specified offices and field offices of the FBI, and specified offices and district offices of the United States Marshals Service. It sought records concerning implementation of Executive Order 14159 and Homeland Security Task Forces, including policy documentation, concepts of operations (CONOPS), operations proposals (OPSPROs), contracts, agreements, impact assessments, policy analyses, organizational charts, and memoranda concerning the termination of the Organized Crime Drug Enforcement Task Forces ("OCDETF"), from October 1, 2025, to the date of production. A copy of that request is attached as Exhibit 13.

37.    LDF's FOIA Requests instructed the relevant agency to search all locations and systems likely to contain responsive records, including email, chat platforms, text messages, shared drives, SharePoint repositories, learning management systems, mobile devices, and

personal accounts used for official business, and requested production of records in electronic form with attachments and metadata intact. These search instructions were designed to make searches reasonable and efficient by identifying likely systems and repositories, including those Defendants have conceded to use for official business.

38.    As part of Plaintiff LDF's advocacy, it frequently engages in the dissemination of information to the public.[12]

39.    LDF's FOIA Requests sought a fee waiver. Disclosure of the requested records meets each of the four factors set forth in 28 C.F.R. § 16.10(k)(1) and the parallel agency regulations. First, the records concern operations or activities of the federal government, specifically abuses of federal counterterrorism regimes and related investigative, surveillance, and enforcement initiatives. Second, disclosure is meaningfully informative about those operations because the requested records concern the policy, programmatic, and operational activities, and the underlying surveillance and enforcement systems, through which the September 2025 Enforcement Directives are being implemented, at a level of detail not currently available to the public. Third, disclosure will contribute to the public education of a broad audience because LDF will widely disseminate the records through its publications, press engagement, website, social media presence, and/or other public education activities. Fourth, disclosure is not in LDF's commercial interest; LDF is a 501(c)(3) nonprofit organization, has no commercial interest in the records, and intends to make the records available to the public at no cost.

40.    LDF's FOIA Requests sought expedited processing under 5 U.S.C. § 552(a)(6)(E). LDF is primarily engaged in disseminating information within the meaning of the statute: it is a

---

[12] *See generally* NAACP Legal Defense Fund website at https://www.naacpldf.org/case-issue-search/.

501(c)(3) organization that, as part of and in furtherance of its public interest mission, regularly issues and makes publicly available reports and other materials concerning government activity for purposes of public education. There is an urgency to inform the public concerning the federal activity at issue because the September 2025 Enforcement Directives are presently being implemented; related federal investigations, surveillance, and enforcement actions are ongoing; and public debate concerning these initiatives is active and unresolved. The urgency to inform the public does not turn on the date of any particular record but on the fact that the systems and authorities documented by the requested records are presently being deployed to implement the September 2025 Enforcement Directives and the AG Memorandum. Records describing the design and prior operation of those systems are necessary now, while enforcement is ongoing, to enable the public to understand actions being taken in real time.

### D. Defendants' Deficient Responses

41.     To date, Defendants have largely failed their obligations under FOIA: No agency has produced any records in response to any of LDF's FOIA Requests. The agency conduct described below establishes that (1) Defendants invoked FOIA's procedural mechanisms, including statutory extensions, and then allowed the resulting deadlines to lapse without producing records or issuing final determinations, and (2) where Defendants addressed LDF's fee waiver requests at all, they granted them only conditionally, in part, or not at all. Further, a limited number of agencies provided responses to Plaintiff's requests that will separately be appealed through the administrative process. In response to some of Defendants' interim responses, Plaintiffs will resubmit their FOIA requests with the information requested by the particular agency. The responses received from many of Defendants thus far, as detailed below and attached as Exhibits 14 through 52, consist of acknowledgments, internal referrals, track assignments, requests for

19

clarification, and denials of expedited processing. Defendants simply ignored and failed to acknowledge many of LDF's requests. Any interim steps taken by Defendants listed below do not constitute final determinations under FOIA, do not identify what records will be produced or withheld, and do not toll FOIA's statutory deadlines. Specifically:[13]

    a. LDF's FOIA request on April 1, 2026, concerning implementation of the September 2025 Enforcement Directives (Exh. 2) was directed to numerous DHS entities, as described above and in Exhibit 2. The Secret Service acknowledged receipt on April 1, 2026, and assigned file number 2026-USSSFOIA-00874 (Exh. 14); on May 21, 2026, the Secret Service unjustifiably rejected the request for expedited processing and held the fee waiver request "in abeyance" pending the quantification of records, and invoked a 10-day extension (Exh. 15). The CBP acknowledged the CBP portion of the request on April 30, 2026, under tracking number CBP-FO-2026-082613 (Exh. 16) and invoked a 10-day extension, which passed with no further action, production or final determination. USCIS acknowledged the request on May 6, 2026, under control number COW2026003847 (Exh. 17), placed it in the complex track, granted a fee waiver, and invoked a 10-day extension, which passed with no further action. CISA acknowledged the request on May 7, 2026, under case number 2026-NPFO-00352 (Exh. 18), invoked a 10-day extension, which passed with no further action, and conditionally granted a fee waiver. None of those responses constituted a final determination or produced responsive records.

---

[13] A chart detailing each request and all responses received thereto is attached as Exhibit 53. Additionally, Plaintiff received unmarked responses from Defendants that did not identify to which FOIA Request they responded. None of these unlabeled responses constituted a final determination or produced responsive records.

b. LDF's request on April 1, 2026, for records referenced throughout the I&A Policy Manual, dated January 16, 2025 (Exh. 3), was acknowledged by the DHS Privacy Office for I&A records on May 1, 2026, under reference number 2026-HQFO-02237 (Exh. 19). DHS stated only that appropriate components had been queried and that any responsive records would later be reviewed for release. On May 28, 2026, DHS further responded stating that it intended to begin providing non-exempt, responsive records in 60 days, and that it would limit records to those created from January 16, 2025 to April 1, 2026 without any confirmation with LDF (Exh. 20). None of those responses purported to be a final determination and no response constituted a production of responsive records.

c. LDF's request on April 2, 2026, concerning purported DHS domestic watchlists (Exh. 4), was directed to numerous DHS entities described above and in Exhibit 4. FPS acknowledged that request on May 8, 2026, under reference number 2026-FPFO-00283 (Exh. 21), unjustifiably denied expedited processing, invoked a 10-day extension, which passed without further action, and conditionally granted a fee waiver. CBP separately acknowledged the CBP portion of the request on April 30, 2026, under tracking number CBP-FO-2026-083363 (Exh. 22), and invoked a 10-day extension, which passed without further action. Neither response constituted a final determination or produced responsive records.

d. LDF's request on April 2, 2026, concerning certain DHS uses of artificial intelligence (Exh. 5), was directed to numerous DHS entities described above and in Exhibit 5. On June 16, 2026, the DHS Privacy Office acknowledged the request under reference number 2026-HQFO-02261 (Exh. 23), redirected LDF to ICE,

21

CBP, TSA, and USSS, and claimed the request was closed. On June 16, 2026, USSS acknowledged the portion of the request forwarded from the DHS Privacy Office under reference number 2026-USSSFOIA-01355 (Exh. 24), denied expedited processing with inadequate justification, held the fee waiver request in abeyance, and invoked a 10-day extension. DHS's response purported to be final determination and no response constituted a production of responsive records.

e. LDF's request on April 2, 2026, concerning undisclosed DHS uses of artificial intelligence (Exh. 6), was directed to numerous DHS entities described above and in Exhibit 6. The DHS Privacy Office acknowledged the request on May 1, 2026, under reference number 2026-HQFO-02260 (Exh. 25). USCIS responded on May 11, 2026 under reference number COW2026003927 (Exh. 26), placing the request on the complex track, denying expedited processing with inadequate justification, granting the fee waiver request, and invoking a 10-day extension due to unusual circumstances. Neither response constituted a final determination or produced responsive records.

f. LDF's request on April 2, 2026, concerning homeland security task forces (Exh. 7), was directed to numerous DHS entities described above and in Exhibit 7.. FPS acknowledged the request on May 8, 2026, under reference number 2026-FPFO-00284 (Exh. 27), unjustifiably denied expedited processing, invoked a 10-day extension, which passed without further action, and conditionally granted a fee waiver. On May 11, 2026, USCIS responded under reference number COW2026003921 (Exh. 28), placed the request on the complex track, denied expedited processing without adequate justification, and invoked a 10-day

extension due to unusual circumstances, and granted the fee waiver. Neither response constituted a final determination or produced responsive records.

g. As of the filing date of this Complaint, no Defendant has responded to LDF's request for records, submitted on April 2, 2026, related to procurements by the Office of Selective Acquisitions (Exh. 8), which was directed to the Office of Selective Acquisitions, a component of the Office of Procurement Operations within the DHS Management Directorate.

h. As of the filing date of this Complaint, no Defendant has responded to LDF's request for records, submitted on April 2, 2026, related to Data Mining Reports (Exh. 9), which was directed to the DHS Privacy Office.

i. LDF's request on April 2, 2026, for privacy threshold analyses (Exh. 10) was directed to numerous DHS entities described above and in Exhibit 10. The Secret Service acknowledged that request on April 2, 2026, and assigned file number 2026-USSSFOIA-00878 (Exh. 29), but stated only that it was reviewing the submission; on May 18, 2026 the Secret Service stated that the information sought by the request is under the purview of DHS and that the request should be submitted to the DHS Privacy Office (Exh. 30). CBP responded on April 30, 2026, under tracking number CBP-FO-2026-083378 (Exh. 31) and asserted that the CBP portion of the request was too broad because it sought every PTA in CBP, instructing LDF to resubmit its request with greater detail. That request for greater detail was improper and LDF did not resubmit its request. The DHS Privacy Office responded on June 16, 2026 under reference number 2026-HQFO-02254, claiming that the request was "too broad in scope" and would produce over 1700 documents

(Exh. 32). The response did not clarify whether a comprehensive search was run or why the volume of records warranted denying the request. That request for greater detail was improper and LDF did not resubmit its request. Those internal reroutings, improper responses, and acknowledgments do not constitute a final determination and do not suspend FOIA's statutory deadlines.

j.  LDF's request on April 2, 2026, concerning DHS program evaluations (Exh. 11), which was directed to the DHS Evaluation Officer, was acknowledged by the DHS Privacy Office on May 1, 2026, under reference number 2026-HQFO-02256 (Exh. 33). DHS did not grant expedited processing, did not make a final fee waiver determination, and did not issue a final determination.

k.  LDF's request on April 16, 2026, concerning implementation of the September 2025 Enforcement Directives (Exh. 12), was directed to numerous DOJ entities described above and in Exhibit 12. The FBI provided two responses to the request under FOIPA Request No. 1733639-000 on April 27, 2026 (Exhs. 34 and 35), acknowledging receipt of the request, stating that the fee waiver was under consideration, classifying LDF as an educational institution, noncommercial scientific institution, or representative of the news media for fee purposes and unjustifiably denying expedited processing. DOJ's Mail Referral Unit responded on April 20, 2026, under tracking number EMRUFOIA041426-3 (Exh. 36) and referred the request to OIP. OIP acknowledged the request on April 21, 2026, under FOIA-2026-02882 (Exh. 37), unjustifiably denied expedited processing, invoked a 10-day extension for unusual circumstances, which passed without further action, placed the request in the complex track, and unilaterally asserted—without

24

confirmation from LDF—that it was initially limiting its search to official correspondence and emails and attachments unless LDF requested additional record categories. ATF acknowledged the request on April 21, 2026, under tracking number 2026-01378 (Exh. 38), invoked a 10-day extension for unusual circumstances, which passed without further action, and placed it in the complex track; on April 24, 2026, ATF separately denied expedited processing in a separate letter (Exh. 39). The National Security Division acknowledged the request on May 1, 2026, under NSD FOIA/PA No. 26-202 (Exh. 40), unjustifiably denied expedited processing, and stated—without justified reasons or confirmation with LDF—that any search would be limited to National Security Division records. The DEA acknowledged the request on May 21, 2026, under 26-04962-F (Exh. 41), and stated the request did not meet the requirements of FOIA without sufficient justification, instructing LDF to resubmit its request with greater detail. That request for greater detail was improper and LDF did not resubmit its request. None of those responses constituted a final determination or production of any responsive records.

l.   LDF's request on April 16, 2026, concerning homeland security task forces and the dissolution of the organized crime and drug enforcement task forces (Exh. 13), was directed to numerous DOJ entities described above and in Exhibit 13. On April 20, 2026, USMS responded to the request under Request No. 2026-USMS-001412, placed the request in the complex queue, invoked a 10-day extension based on unusual circumstances, which passed without further action, and stated that its review of LDF's expedited processing request had not yet occurred (Exh. 42); on

25

May 21, 2026, USMS unjustifiably denied expedited processing, rejected the fee waiver request, and stated that a search for records had not been completed notwithstanding passage of the 10-day extension (Exh. 43). DOJ's Mail Referral Unit responded on April 20, 2026, under tracking number EMRUFOIA041626-1 (Exh. 44), and referred the request to OIP and the Executive Office for U.S. Attorneys ("EOUSA"). OIP acknowledged the request on April 21, 2026, under FOIA-2026-02883 (Exh. 45), denied expedited processing without sufficient justification, invoked a 10-day extension due to unusual circumstances, placed the request in the complex track, and unilaterally asserted—without confirmation from LDF—that it was initially limiting its search to official correspondence and emails and attachments unless LDF requested additional record categories. ATF acknowledged the request on April 20, 2026, under tracking number 2026-01379 (Exh. 46), invoked a 10-day extension based on unusual circumstances, which passed without further action, and placed it in the complex track; on April 23, 2026, ATF separately denied expedited processing—without sufficient grounds (Exh. 47). The FBI formally acknowledged the request on April 30, 2026, under FOIPA Request No. 1734023-000 (Exh. 48), stating that the fee waiver was under consideration and classifying LDF as an educational institution, noncommercial scientific institution, or representative of the news media for fee purposes; on May 4, 2026, the FBI denied expedited processing without sufficient justification (Exh. 49). The National Security Division acknowledged the request on May 1, 2026, under NSD FOIA/PA #26-203 (Exh. 50), denied expedited processing, and stated that any search would be limited to National Security Division records—all without

26

sufficient justifications or confirmation with LDF. The Civil Rights Division acknowledged the request on May 14, 2026, under 26-00400-F (Exh. 51) and denied expedited processing without sufficient justification. The DEA acknowledged the request on May 21, 2026, under 26-04963-F (Exh. 52), and stated the request did not meet the requirements of FOIA without sufficient justification, instructing LDF to resubmit its request with greater detail. That request for greater detail was improper and LDF did not resubmit its request. None of those responses constituted a final determination or the release of responsive records.

42.    None of Defendants' responses satisfy FOIA or their obligation to produce records or issue a final determination within the statutory time period. Bare acknowledgments and interim procedural steps like referrals or consultations are not final determinations. Defendants have not released any records, have not identified the scope of any completed searches, have not identified the records they will produce, have not identified documents withheld under applicable exceptions, have not provided determinations to segregate responsive documents from unresponsive or withheld documents, have not articulated specific foreseeable harms, and, except where specifically noted, have not granted LDF's fee waiver requests in full. Specifically, where Defendants acted on LDF's fee waiver requests, they did so only by granting them conditionally, granting them in part, holding them in abeyance, or denying them, and in no instance granted LDF's fee waiver request in full as FOIA's public-interest standard requires.

43.    Defendants have also officially acknowledged the existence of records and activities responsive to LDF's FOIA Requests. Among other things, Defendants, senior Administration officials, and written materials in the public record have openly confirmed that the

27

FBI has initiated domestic terrorism investigations into anti-immigration enforcement activity in at least 23 field office regions; that DHS has opened NSPM-7 investigations of nonprofit organizations; that the FBI established an NSPM-7 Joint Mission Center; that the Attorney General issued a memorandum implementing NSPM-7; and that entities within DHS and DOJ create privacy threshold analyses and similar documents. Any refusal to confirm or deny the existence of records concerning these matters would be inconsistent with these official acknowledgments and, thus, would not satisfy FOIA.

44.    In light of public reporting that DHS and DOJ supervisors have instructed personnel not to memorialize certain enforcement practices in writing, and given Defendants' use of email, chat platforms, text messages, ephemeral messaging applications, mobile devices, and personal accounts for official business, LDF has requested, and continues to request, that Defendants suspend any auto-deletion or routine disposal practices and preserve all records, including ephemeral and electronic communications, that may be responsive to LDF's FOIA Requests.

45.    Multiple Defendant components denied LDF's requests for expedited processing without properly applying FOIA's statutory standard for compelling need. *See, e.g.,* Exhs. 21, 49. Most of those denials failed to address each statutory element and were not accompanied by any lawful basis.

### E.    Exhaustion of Administrative Remedies

46.    LDF submitted its DHS FOIA Requests on April 1 and April 2, 2026, and its DOJ FOIA Requests on April 16, 2026. Defendants thereafter responded between April 1, 2026, and June 16, 2026. In some instances, Defendants did not respond at all, as described above. *See* Exhibits 8 and 9, attached hereto.

47.      As of the file date of this Complaint, more than twenty working days (as extended, if applicable)—excluding Saturdays, Sundays, and legal public holidays—have elapsed since LDF submitted its FOIA Requests and since the relevant DHS and DOJ components received or were referred those requests for processing. As of the file date, Defendants have not made the timely determinations that FOIA requires, have not granted LDF's requests fee waivers in full, and have not produced any responsive non-exempt records—let alone all of them, as FOIA requires.

48.      Defendants' improper disputes and internal referrals do not suspend FOIA's statutory clock.

49.      Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), LDF has therefore constructively exhausted its administrative remedies with respect to all of the FOIA Requests at issue in this action.

## CLAIMS FOR RELIEF

### First Claim For Relief

**FOIA, 5 U.S.C. §§ 552(a)(3), 552(a)(6), and 552(a)(8)**
**Failure to Timely Determine, Search For, Disclose, and Release Responsive Records**

50.      Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1–49 as if repeated and incorporated herein.

51.      Defendants are required to make timely determinations whether to comply with Plaintiff's perfected FOIA Requests, to conduct searches reasonably calculated to uncover all responsive records, to process those requests in accordance with FOIA, and to produce all responsive non-exempt records and all reasonably segregable portions of records properly withheld in part.

52.      Defendants failed to: timely determine whether to comply with Plaintiff's requests; conduct adequate searches; process Plaintiff's perfected requests; produce responsive non-exempt

records and reasonably segregable portions thereof; and articulate any lawful basis for withholding responsive documents. These failures constitute violations of 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A)(i), 552(a)(6)(C)(i), 552(b), and 552(a)(8)(A), as well as any corresponding regulations.

## Second Claim For Relief

### Violation of FOIA, 5 U.S.C. § 552(a)(6)(E) — Improper Denial of Plaintiff's Request for Expedited Processing

53.    Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1–49 as if repeated and incorporated herein.

54.    By denying Plaintiff's requests for expedited processing without properly applying FOIA's compelling need standard, Defendants violated Plaintiff's rights under 5 U.S.C. § 552(a)(6)(E) and corresponding regulations.

## Third Claim For Relief

### FOIA, 5 U.S.C. § 552(a)(4)(A)(iii) and § 552(a)(4)(A)(viii) Improper Denial of, and Failure Timely to Decide, Plaintiff's Requests for Fee Waivers and for Improper Reservation of Fees

55.    Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1–49 as if repeated and incorporated herein.

56.    Defendants failed to timely adjudicate Plaintiff's requests for fee waivers; denied, conditionally granted, or otherwise failed to grant those requests in full under FOIA's public-interest standard; and/or reserved the ability to assess fees notwithstanding failure to comply with FOIA's deadlines. Accordingly, Defendants violated Plaintiff's rights under 5 U.S.C. § 552(a)(4)(A)(iii), 5 U.S.C. § 552(a)(4)(A)(viii), and any corresponding regulations.

30

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LDF respectfully requests that this Court:

A. Declare that Defendants' failure to timely review and assess Plaintiff's requests, failure to timely adjudicate Plaintiff's requests for fee waivers, and failure to produce responsive, non-exempt records violate FOIA;

B. Order Defendants, and each of their relevant constituent offices and components, as identified in Exhibit 1 hereto, to make immediate, full, adequate, and prompt searches for records responsive to Plaintiff's FOIA Requests;

C. Order Defendants to process Plaintiff's FOIA Requests on an expedited basis;

D. Order Defendants to grant Plaintiff's fee waiver requests fully and enjoin Defendants from assessing fees or costs in connection with processing the FOIA Requests, unless any waiver of fees or costs is expressly prohibited by FOIA;

E. Order Defendants, upon completion of processing, to produce all responsive, non-exempt records and all reasonably segregable portions of responsive records containing exempt portions that are withheld in part;

F. Award Plaintiff its costs and reasonable attorney's fees incurred in this action, as provided by 5 U.S.C. § 552(a)(4)(E); and

G. Grant any other and further relief as this Court may deem just and proper.

Dated: June 17, 2026
New York, NY

Respectfully submitted,

Jin Hee Lee (NY No. 3961158)
Puneet Cheema*
NAACP Legal Defense & Educational Fund, Inc.
700 14th Street NW, 6th Floor
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org
pcheema@naacpldf.org

Ethan E. Litwin (SDNY No. EL7083)
Matthew L. Cantor (SDNY No. MC8183)
SHINDER CANTOR LERNER LLP
14 Penn Plaza, 19th Floor
New York, NY 10122
(646) 960-8600
matthew@scl-llp.com
ethan@scl-llp.com

Kyle Angelotti*
SHINDER CANTOR LERNER LLP
600 14th St. NW, 5th Floor
Washington, DC 20005
(646) 960-8624
kangelotti@scl-llp.com

*Attorneys for Plaintiff NAACP Legal
Defense and Educational Fund, Inc.*

*\* Pro hac vice forthcoming*